UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KENNETH WHITTEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 2:24-CV-407-PPS-JEM |
| MIDWEST REFRIGERATION CORP., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## OPINION AND ORDER

Kenneth Whitten sues his former employer, Midwest Refrigeration Corp., alleging two violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and a state law claim for breach of oral agreement. Whitten also originally sued the fiduciaries of the pension fund at issue, but he removed the fiduciaries from his suit when he amended his complaint. Midwest now seeks dismissal pursuant to Rule 12(b)(6) claiming Whitten has not plausibly alleged Midwest is a proper defendant for either of his ERISA claims. For the reasons outlined below, I find that Midwest is correct on the federal claims, so they will be dismissed with prejudice. And because I am exercising my discretion to relinquish jurisdiction over the state law claim, that claim will also be dismissed but without prejudice.

### Background

For purposes of this opinion, I take all well-plead facts as true. Whitten worked for Midwest for approximately 36 years from June 1987 until 2023. [DE 7 at ¶¶8, 11.]

Whitten originally worked as a shop laborer before joining the local union and becoming a carpenter in 1989. [*Id.* at ¶11.] His work entailed building refrigeration units and coolers. [*Id.* at ¶14.]

Whitten says his union and Midwest entered into a collective bargaining agreement on September 25, 1989, that obligated Midwest to make pension contributions on behalf of Whitten and other eligible employees. [*Id.* at ¶13.] Despite this obligation, Whitten alleges Midwest did not begin to make pension contributions on his behalf until eight years later on August 31, 1997. [*Id.* at ¶¶15–16.]

Whitten contacted the pension office in December 2022 about his plan. [*Id.* at ¶20.] The pension office informed Whitten his plan vested based on contributions beginning in 1998—not 1989 as he expected. [*Id.*] After discussions concerning this discrepancy in contributions, Whitten says he entered into an oral agreement with Midwest for Midwest to pay him his unpaid pension contributions in four installments, but Midwest ceased payments after the first installment. [*Id.* at ¶¶23–24.]

On November 18, 2024, Whitten sued Midwest and the named fiduciaries for his pension trust fund alleging violations of ERISA under 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) by failing to remit pension contributions from 1989 to 1997 and failing to advise him of its failure to do the same. Whitten also brings a third count for state law breach of the oral agreement to repay him. He amended his complaint on February 19, 2025, to remove the named fiduciaries as a defendant. [DE 7.] All three original claims remain pending against Midwest, the sole remaining defendant. Midwest has moved to dismiss all three of Whitten's claims for failure to state a claim.

**Discussion**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. The plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**I.    Whitten's Section 502(a)(1)(B) Claim Fails as Alleged Against Midwest**

Midwest argues Whitten's two ERISA claims are time barred by their applicable statutes of limitations, are not asserted against the correct defendant, are not ripe, are mutually exclusive theories of relief, and, regardless, fail to state the elements of the claims. Because of its potential to be dispositive, I first analyze the fundamental question of whether Midwest is the proper defendant for either of Whitten's ERISA claims.

Under 29 U.S.C. § 1132(a)(1)(B), also known as Section 502(a)(1)(B) of ERISA, a plaintiff may bring suit to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

3

under the terms of the plan[.]" Midwest says a Section 502(a)(1)(B) claim "may only be brought against the [benefits] plan itself[.]" [DE 14 at 10.] And because it is a contributing employer and not Whitten's benefits plan, Midwest says Whitten has sued the wrong defendant for this claim.

The Seventh Circuit has suggested that the benefits plan itself is the only proper defendant for a Section 502(a)(1)(B) claim. *See e.g.*, *Jass v. Prudential Healthcare Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) ("The appropriate defendant for a denial of benefits claim would be the Plan[.]"); *Garratt v. Knowles*, 245 F.3d 941, 949 (7th Cir. 2001) (holding the plaintiff "cannot escape the rule, clearly articulated in *Jass,* that ERISA permits suits to recover benefits *only against a Plan as an entity.*") (emphasis in original) (citation omitted). These cases rely on the language of 29 U.S.C. § 1132(d): "[a]n employee benefit plan may sue or be sued under this subchapter as an entity" and "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."

Despite these broad proclamations concerning non-plan defendants, the Seventh Circuit has recognized two categories of exceptions that permit Section 502(a)(1)(B) suits against non-plan defendants like Midwest. In *Leister v Dovetail, Inc.*, the Seventh Circuit noted that "the plan is the logical and normally the only proper defendant" in Section 502(a)(1)(B) suits. 546 F.3d 875, 879 (7th Cir. 2008). That said, the Seventh Circuit determined plaintiffs could sue "whatever entity or entities, individual or corporate,

4

*control* the plan" when "the plan ha[d] never been unambiguously identified as a distinct entity." *Id.* (emphasis added). Here, the Board of Trustees for the Carpenter's Pension Fund is plainly a "distinct entity." Indeed, Whitten has pleaded himself out of application of the *Leister* exception because he identifies his plan sponsor by name ("the Board of Trustees of the Indiana/Kentucky/Ohio Regional Council of Carpenters Pension Fund") and identification number (51-6123713). [DE 7 at ¶10.] Whitten unambiguously identifies his benefits plan as a distinct entity from Midwest.

Second, the Seventh Circuit recognizes that employers sometimes administer or are "closely intertwined" with the plans at issue such that they become proper defendants for Section 502(a)(1)(B) claims. *See Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001). In *Mein*, while affirming dismissal on other grounds, the Seventh Circuit declined to affirm dismissal of a plaintiff's Section 502(a)(1)(B) claim against his employer where the employer was the plan administrator and the designated agent for process. *Id.* at 584–85; *Garratt*, 245 F.3d at 949 n.7 (commenting that "because often the corporation and the plan are intertwined, with the plan documents referring to the plan and the company interchangeably, we noted [in *Mein*] that in certain instances, the fact that the corporation is named as a defendant in the suit is no barrier to allowing the case to proceed.").

In a persuasive opinion surveying the landscape of Seventh Circuit and district court opinions on this subject, a court summed up the lay of the land as follows: "a claim may proceed against a party other than the ERISA plan itself where the identity of that party—be it an employer, an insurance company, or another third-party

5

administrator—is 'closely intertwined' with the plan, and where the party controls eligibility for benefits and makes benefits payments." *Ayotte v. Prudential Ins. Co. of Am.*, 900 F.Supp.2d 814, 819 (N.D. Ill. 2012). I agree. So, what must Whitten allege to survive dismissal on the question of whether Midwest is "closely intertwined" with his benefits plan?

Courts have denied Rule 12(b)(6) motions that require resolving questions of fact concerning whether a plan and employer are "closely intertwined." *See Ramos v. Maxine Ltd. 401(k) Plan*, No. 10 C 3223, 2010 WL 4688990, at *1 (N.D. Ill. Nov. 10, 2010) (collecting cases). In *Ramos*, the employer defendant was the plan administrator, the plan's registered agent, and shared the same address as the plan. *Id.* These allegations by plaintiff weighed against the fact that plan documents identified the employer and plan as separate entities. *Id.* The court concluded that this mixed evidence rendered it "inappropriate at the Rule 12(b)(6) stage to dismiss [the employer] on the ground that it is not sufficiently 'intertwined' with the Plan to allow a separate claim against [the employer]." *Id.*

On the other hand, courts have dismissed employer defendants where the employer "is not responsible for paying claims or making benefits determinations under the Plan." *Robinson v. Aetna Life Ins. Co.*, No. 20 C 4670, 2021 WL 4206785, at *9 (N.D. Ill. Sep. 15, 2021). In *Robinson*, the employer defendant did not control benefit distribution payments and while named as a co-plan administrator, had delegated authority to make eligibility determinations to the other named plan administrator. *Id.* at *8–9. The court found these facts did not square with the *Mein* exception and

6

warranted dismissal.

I find Whitten has not pled any allegations to suggest Midwest is "closely intertwined" with his pension fund to permit his Section 502(a)(1)(B) claim to proceed. Unlike the employer defendant in *Mein*, the plan at issue here is not an employer-managed 401k plan and Whitten has not alleged Midwest is the plan administrator, a key fact that has guided district courts' hesitation to dismiss Section 502(a)(1)(B) claims. By contrast, Whitten has pled facts that suggest a run of the mill arrangement in which his employer, Midwest, remitted (or was supposed to remit) funds to a benefits plan established by his carpenters union and administered by a separate board of trustees. Nor has Whitten alleged that Midwest performs plan functions such as determining eligibility for benefits or processing claims. *See Robinson*, 2021 WL 4206785, at *9 ("Because Mondelez is not responsible for paying claims or making benefits determinations under the Plan, it is not subject to suit under Section 502(a)(1)(B).").

I do not have the benefit of plan documents that suggest otherwise as was the case in *Ramos*. In fact, I do not have the benefit of *any response* from Whitten to Midwest's argument on this point. Whitten of course has no obligation to prove his case at this stage or attach evidence, but he alleges no facts to plausibly suggest Midwest is sufficiently intertwined with his plan to state a Section 502(a)(1)(B) claim against it.

**II.     Whitten's Section 502(a)(3) Claim Fails as Alleged Against Midwest**

Whitten's second ERISA claim alleges a breach of fiduciary duty under Section 502(a)(3). "A claim for breach of fiduciary duty under ERISA requires the plaintiff to prove: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its

7

fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010). ERISA's fiduciary duty provision requires fiduciaries of a plan to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries [and] defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A); *Brooks v. Pactiv Corp.*, 729 F.3d 758, 765 (7th Cir. 2013).

The threshold question in a breach of fiduciary duty claim is, naturally, "whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Id.* (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). There are two types of ERISA fiduciaries: (1) a "named fiduciary," (naturally, the fiduciary "who is named in the plan", 29 U.S.C. § 1102(a)(2)); and (2) a "functional fiduciary." Whitten argues Midwest is a "functional fiduciary", which ERISA defines as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The key inquiry is whether the person is "acting in the capacity of manager, administrator, or financial advisor to a 'plan.'" *Brooks*, 729 F.3d at 765 (quoting *Pegram*, 530 U.S. at 222).

8

Midwest argues Whitten has pled no allegations to suggest Midwest has any authority, control, or discretion with respect to the benefit fund's assets, administration, or management. Whitten makes two arguments in response. First, he points to the allegation in his complaint that Midwest "failed to make the required pension contributions on [his] behalf from 1989 through 1997." [DE 7 at ¶15.] Whitten's theory here is that Midwest exercised control over the plan's assets by not paying into the plan as required. But if that were true, "it would convert every contributing employer into a plan fiduciary." *Chi. Dist. Council of Carpenters Pension Fund v. Angulo*, 150 F.Supp.2d 976, 978 (N.D. Ill. 2001). The *Angulo*, court reasoned that "[not] every delinquent employer's nonpayment of a contribution equates to its exercising its control over the 'disposition' of a plan's assets, so as to impose fiduciary liability by reason of the nonpayment." *Id.* at 979. Whitten blanky points to the same legal theory rejected in *Angulo* without any support.

Second, Whitten argues his allegation that Midwest's partial payment of $23,538.20 to correct its shortfall in contributions demonstrates discretionary control over the fund and the administration of its contributions. Whitten's allegations here are once more without citation to legal authority, and they conflate two distinct sources of assets. The check attached to Whitten's Amended Complaint illustrates the problem with Whitten's theory. This check is from Midwest; it is not from the fund. [DE 7-2.] This payment does not plausibly allege Midwest exercised any control over the *fund's* assets. On the contrary, it shows Midwest exercising control over its *own* assets. Neither of Whitten's theories plausibly allege Midwest is a functional fiduciary for purposes of

9

a Section 502(a)(3) claim.

### III. The Court Declines to Exercise Jurisdiction Over Whitten's Breach of Oral Agreement Claim

Having found that Whitten's federal claims fail to state claims for relief, I decline to exercise supplemental jurisdiction over Whitten's remaining state law claim for breach of an oral agreement. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); 28 U.S.C. § 1367(c). The Seventh Circuit counsels "that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).

As with every rule, there are exceptions. These include when:

> (1) "the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court"; (2) "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort"; or (3) "when it is absolutely clear how the pendent claims can be decided."

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009) (internal citation and quotation marks omitted). None of these exceptions clearly apply here.

### Conclusion

For the aforementioned reasons, Midwest Refrigeration Corp.'s Motion to Dismiss [DE 13] is **GRANTED**. The two ERISA claims contained in Counts I and II of the Amended Complaint [DE 7] are **DISMISSED** against Defendant Midwest Refrigeration Corp. The state law breach oral agreement claim alleged in Count III is

also dismissed, but without prejudice. The Clerk shall enter judgment in favor of the Defendant and against the Plaintiff accordingly.

**SO ORDERED.**

ENTERED: October 23, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT